IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                                  No.  02-40153-01-SAC

KEVIN X. FRATER,

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's motion to review (Dk. 121) the magistrate judge's order of detention (Dk. 120).  The magistrate judge conducted a detention hearing on October 21, 2009, pursuant to 18 U.S.C. § 3142(f).  After considering the parties' evidence, proffers and arguments, he entered an order of detention on the same day. (Dk. 120).  The stated ultimate reason for detention was the magistrate judge's finding by a preponderance of evidence "that no condition or combinations of conditions will reasonably assure the appearance of the defendant as required, *i.e.*, the defendant poses a serious flight risk." (Dk. 120, p. 1).  The defendant's motion to review summarily challenges that the evidence presented at the detention hearing fails to sustain the magistrate judge's stated reason for detention.  (Dk. 121).

At the court's direction, the parties submitted memoranda on their respective positions. (Dks. 124 and 125). The court reviewed the recording of the hearing before the magistrate judge and the documentary evidence admitted at the hearing. On October 28, 2009, the court heard the parties' presentations which included several supplemental proffers from the defendant. At the close of the hearing, the court ruled from the bench finding that based on "the high stakes involved in this case, the defendant's past behavior, his strong connections to international travel, and his attenuated connections to the United States, . . . the defendant is a serious flight risk and that no combination of conditions exists that will reasonably assure his appearance as required." The court ordered the defendant's continued detention pending trial pursuant to his "ruling and the order to be filed and to the order of detention previously entered by the magistrate judge." This order is filed to meet the requirements of § 3142(i).

The district court has reviewed and relied on the record made before the magistrate judge which included the testimony of Special Agent Jack Smalley, the parties' proffers, and several exhibits. The government's exhibit one is a print out dated October 20, 2009, from a United States Drug Enforcement Administration website showing the defendant's name

and photo as a fugitive wanted for drug violations in the District of Kansas. The government's exhibit two is a copy of the judgment entered by High Court of Justice, Queen's Bench Division, The Administrative Court, that revoked the grant of conditional bail to Kevin Frater and ordered his detention pending extradition. The last exhibit is the defendant's exhibit 401 which are transcripts made from a series of controlled telephone calls between Austin Williams and Kevin Frater made shortly after the seizure of the plane and drugs on December 10, 2002. The court also has reviewed transcripts from the co-defendant Austin Williams' trial in April of 2003, as the parties referenced these proceedings in their arguments. Finally, Agent Smalley's testimony before the magistrate judge included statements taken during interviews of witnesses involved in the criminal prosecution of Charles Bowe. In Williams' trial in this court, Hernan Turtula testified that he was a pilot who worked for Charles Bowe and that he remembered flying Bowe on cross-country trips for brief stays with Bowe bringing along four heavy bags. Turtula also testified to witnessing Frater's participation in moving those bags. In its legal research, the court found and read the unpublished decision of the Eleventh Circuit, *United States v. Bowe*, 192 Fed. Appx. 871, 2006 WL 2271197 (11th Cir. 2006), *cert. denied*, 549 U.S.

1257 (2007).

**STANDARD OF REVIEW**

By statute, 18 U.S.C. § 3145(b), a defendant detained by a magistrate judge may seek review before the district court having original jurisdiction of the charged offense. This is a de novo review of the magistrate judge's order. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). The district court independently makes factual findings and determines the propriety of detention without deference to the magistrate judge's findings or conclusion. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002) (and cases cited therein). De novo review, however, does not require a de novo evidentiary hearing. *Id.* The district court may elect to "start from scratch" and hear the relevant evidence, or it simply may incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted there. *Id.* In its discretion, the district court may conduct evidentiary hearings if "necessary or desirable" whether or not new evidence is to be offered. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).

The court incorporates the record of the proceedings conducted by the magistrate judge and considers the arguments and proffer submitted

in support of the pending motion for review and at the hearing held on October 28, 2009.

**CONTROLLING LAW**

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., the court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community." *See* 18 U.S.C. § 3142(b), (c), and (e); *see United States v. Cisneros*, 328 F.3d at 616. "The government must prove risk of flight by a preponderance of the evidence." *Cisneros*, 328 F.3d at 616 (and cases cited therein). In making this determination, the court is to consider "the available information" on the following four factors: the nature and circumstances of the offense, including whether the offense is a crime of violence or involves a narcotic drug; the weight of the evidence; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community posed by a release on conditions. 18 U.S.C. § 3142(g).

The Bail Reform Act, specifically 18 U.S.C. § 3142(e), recognizes a rebuttable presumption of risk of flight or danger to the

5

community upon a finding "that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. §§ 801 et seq.)" A grand jury indictment charging such an offense is enough to trigger this presumption. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000). The presumption operates as follows:

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*Stricklin*, 932 F.2d at 1354-55 (citations omitted). "Thus the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-799 (5th Cir. 1989) (footnote omitted).

      Count one of the indictment charges the defendant with conspiracy to distribute at least 153.4 kilograms of cocaine in violation of

6

21 U.S.C. § 846 with reference to 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(A). (Dk. 21). The penalty section, 21 U.S.C. § 841(b)(1)(A), specifies a mandatory minimum sentence of 10 years and not more than life imprisonment. (Dk. 1). Thus, count one charges an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years or more as prescribed thereunder. The court finds, as did the magistrate judge, that a rebuttable presumption of risk of flight exists here.

The defendant's initial "'burden of production . . . is to offer some credible evidence contrary to the statutory presumption.'" *United States v. Walters*, 89 F. Supp. 2d at 1220 (quoting *United States v. Miller*, 625 F. Supp. 513, 519 (D. Kan. 1985)). "Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is 'particularly high among those charged with major drug offenses.'" *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir. 1986) (quoting Senate Report at 20, reprinted at 1984 U.S. Code Cong. & Ad. News 3203). Additionally, "the presumption 'reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade.'" *United States v. Ronquillo*, 2009 WL

7

1860414, at *4 (D. N.M. 2009) (quoting *United States v. Moreno*, 1994 WL 390091, at *2 (1st Cir. 1994) (unpublished)). Thus, to rebut this presumption, a defendant must come forward with some credible evidence of something specific about his charged criminal conduct or about his individual circumstances that tends to show that "'what is true in general is not true in the particular case." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quotation and citation omitted). Of course, the burden of proof remains with the government to show there is no condition or combination of conditions that would reasonably assure the accused's presence in later proceedings. *United States v. Lutz*, 207 F. Supp. 2d at 1251.

**ANALYSIS AND RULING**

This ruling considers all evidence summarized and incorporated by reference above and all positions and arguments advanced to the magistrate judge and the district court both orally and in writing.

*Statutory Presumption*

As did the magistrate judge, the court finds that the defendant has not carried his burden of production in coming forward with some

8

credible evidence to rebut the statutory presumption of detention. The defendant's age, business career and lack of criminal history probably would have been sufficient in a typical case. Such evidence, however, does not credibly rebut the presumption of flight here, as the defendant left the country just a few days after a large amount of drugs were seized from bags being transported at his arrangement. Until his extradition, the defendant never returned to the United States during any point over the last seven years despite having lived and worked here for over 20 years and having a son who lives in Florida. It seems untenable to divorce the defendant's personal characteristics from his actual behavior and conclude that his characteristics tend to show the presumption of flight may not be generally applicable to him. The defendant has failed to rebut the presumption of detention.

*Consideration of § 3142(g) Factors*

As stated from the bench, the court would still order detention even assuming the defendant's evidence was regarded as sufficient to rebut the presumption.

<u>Nature and Circumstances of the Offenses</u>.

The defendant is charged with conspiracy to distribute a large

9

amount of cocaine.  This cocaine was found in bags seized from a plane during a stop in Salina, Kansas on December 10, 2002.  The bags were being transported by the passenger, Austin Williams, who told officers that he was working for Kevin Frater.  Williams later made several controlled telephone calls to Frater on the pretense that the flight had been interrupted because of mechanical problems.  They had extended discussions on what to do with the bags until the plane was repaired.  Agent Smalley testified that the next morning a jet chartered by Frater arrived at the Salina airport to pick up Williams.  Smalley pretended to be Williams and spoke to the pilot by telephone.  Smalley told the pilot that he did not want to travel with them but that the "dope" was in a particular room at the Red Coach Inn.  A short time later, a person having a Jamaican accent called the Red Coach Inn and spoke to an undercover agent.  The person explained that someone staying there had experienced a family emergency and asked whether the items left by this family member could be retrieved from the room.  Agent Smalley testified that Frater's phone records show a call to the Red Coach Inn.

The amount of drugs alone establishes this as a serious drug trafficking case which carries a mandatory minimum sentence of ten years.

The advisory guideline sentencing range considering only the amount of the cocaine and a criminal history category of one is 235 to 293 months. A sealed indictment was filed on December 11, 2002, and an arrest warrant was issued for the defendant Frater on December 13, 2002. Frater left the country before he could be arrested on this warrant. The government dismissed without prejudice the count one charge of conspiracy against the co-defendant Austin Williams, (Dk. 41), and the jury acquitted Williams on the count two charge of possession with the intent to distribute, (Dk. 77). On August 27, 2009, the arrest warrant for Frater was executed following the defendant's extradition from England. The court believes the serious nature and circumstances of this offense and the prosecution favor detention.

Weight of the Evidence.

The defendant contests this factor asking with whom did he conspire in light of the disposition of this case against the co-defendant Williams. Agent Smalley testified before the magistrate judge to Damian Coverly and Charles Bowe being involved in this conspiracy. The docket sheet in this case reflects that a writ of habeas corpus ad testificandum has issued as to Damian Coverly. The Eleventh Circuit's opinion summarizes

11

Coverly's testimony from Bowe's trial:

> Coverly testified that, on one occasion, he and Bowe traveled to New York where they picked up seven or eight roller bags filled with cash. In New York, Coverly and Bowe met Kevin Frater, a friend of Bowe. Coverly testified that he and Bowe flew from New York to California with a stop in Kansas to refuel. Coverly testified that in California they swapped the money in the roller bags for cocaine and returned to New York, again stopping in Kansas for fuel. In New York, Frater met Coverly and Bowe at the airport, picked up the cocaine, left and returned in about an hour and a half. Coverly, Bowe, and Frater then returned to Miami. Bowe objected to this testimony on the ground that it was irrelevant and not within the charged conduct. The district court overruled the objection.
> Coverly then testified regarding another drug transaction. He testified that, a short time later, a man named Austin Williams was stopped by drug enforcement agents in Kansas with 155 kilograms of cocaine when his plane stopped to refuel. Coverly testified that Williams tried to call Frater several times while Coverly, Bowe, and Frater were together. Coverly testified that he, Bowe, and Frater considered going to Kansas City to intercept the drugs but decided not to go because they were suspicious that Williams had been arrested. Frater then became nervous and decided he needed to leave the country. Coverly testified that he and Bowe took Frater to the airport where Frater left on one of Bowe's airplanes. Bowe did not object to Coverly's testimony.

192 Fed. Appx. at 873-874, 2006 WL 2271197, at *1. It does appear the government has evidence that Coverly and Bowe were co-conspirators in the conspiracy charged in count one. Agent Smalley further testified that he interviewed Robert Nylund who worked for Charles Bowe and who flew Frater to Cuba. Nylund said that Frater boarded the plane in the Bahamas on December 12, 2002, and was flown to Cuba. Nylund testified in Bowe's

12

trial that "Frater told him that Frater needed to leave the country because a friend had been arrested for drugs in Salina, Kansas, that he was scared, and that he could not go back." 192 Fed. Appx. at 875, 2006 WL 2271197, at *2. In the recorded telephone calls between Austin Williams and Kevin Frater, it is true that Frater never admits knowing that the luggage contained illegal drugs, but his comments and directions to Williams for handling the luggage (use a fictitious name and check into a hotel room with the bags) is certainly suspicious. The government appears to have several witnesses, including a cooperating co-conspirator, who will testify to a working relationship between Frater and Bowe.[1] From what has been presented about the government's case, the court would find the evidence to be of sufficient weight as to favor detention.

History and Characteristics of the Defendant.

The defendant's age is fifty-six years, and he is a dual citizen of the United Kingdom and the United States. He had passports from the United Kingdom and the United States, both of which were surrendered

---

[1] Bowe was convicted on drug trafficking charges and sentenced to 384 months' imprisonment. This explains the finding in the English court that a "co-conspirator was sentenced to 32 years' imprisonment; the minimum term would be 20 years." (Govt. Ex. p. 2, ¶ 4). While the mandatory minimum sentence is ten years on count one against Frater, the bottom of the advisory guideline range is 235 months, almost 20 years.

13

after his arrest in London.  The record is unclear and disputed as to whether he also has a Jamaican passport and its current status.  His parents and siblings live in Jamaica, as did one of his sons until recently.  He is currently married, and his wife still resides in the United Arab Emirates ("UAE").  The defendant proffers that his wife will be coming to the United States once she has secured the necessary documentation from the government.

The defendant is a pilot with experience flying civilian and military aircraft.  Following his departure from the United States, the defendant traveled extensively living in Jamaica, the United Kingdom and the UAE.  Agent Smalley testified that agents tracked the defendant finding him first in Jamaica where he lived and worked in a family business and later confirming his presence in the UAE which does not have an extradition treaty with the United States.  The defendant has been living in the UAE for several years and working as a flight instructor for Emirates Air where he earned $6,000 monthly.  The defendant was detained in Heathrow Airport during his return trip from Jamaica to Dubai.

Having not worked since his arrest in England in April of 2009, and proffering that he has accrued extensive liabilities, the defendant

14

argues he lacks the financial means to flee the country particularly after having surrendered his passports.  The finding by the Administrative Court in the Queen's Bench Division was that the defendant at the time of his arrest "had upon him apparent signs of prosperity."  (Govt. Ex. 2, p. 2, ¶ 3).  The circumstances of his flight from the United States in December 2002 show the defendant to have had the means to arrange travel plans quickly through friends and associates with little regard for cost or for the financial consequences to his ongoing business concerns.  The court has heard the defendant's proffer that he left the country in December of 2002 for a planned Christmas vacation in Spain and that he flew to Havana, Cuba, to make a connecting flight to Spain.  By calling the trip a "vacation," the defendant implies a return to work in the United States which never happened here.  For that matter, the defendant offers no plausible explanation for making a planned vacation trip to Spain via Cuba.  Finally, the defendant's absence from the United States for the last seven years attenuates any assertion of ties here through family or friends.  The court finds this factor also favors detention.

*Conclusion*

The court has no confidence that the defendant's proposed

plan of staying with a relative in New York or staying without family in Topeka, Kansas, would reasonably assure the defendant's appearance as required. The substantial amount of drugs charged in the indictment, the defendant's past flight from this country and his recent residence in a country that has no extradition treaty with the United States, his close and sustained connections to international travel and to his family who live outside the United States, and his attenuated connections to the United States demonstrated by his absence for seven years persuade this court that the government has shown by a preponderance of evidence that the defendant is a serious flight risk and that no combination of conditions exists that will reasonably assure his appearance as required. After careful consideration of all matters submitted at the hearing within the framework required by the Bail Reform Act, the court concludes that the government has carried its burden of proving that pretrial detention is warranted in this case.

IT IS THEREFORE ORDERED that the motion to review (Dk. 121) the detention order is granted insofar as the court has conducted its de novo review and is denied as to all relief requested therein;

IT IS FURTHER ORDERED that the defendant will be detained

pending trial pursuant to this order and to the order of detention entered by the magistrate judge, including the additional directives set out in that order.

Dated this 2nd day of November, 2009, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge